ATTORNEY DISCIPLINARY PROCEEDING PER CURIAM | )This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Peter Brian Derouen, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1] FORMAL CHARGES In August 2014, Danielle Garner retained respondent to represent her in a personal injury matter stemming from an automobile accident. Thereafter, respondent failed to communicate with Ms. Garner and failed to coordinate necessary medical treatment for her injuries. In March 2015, Ms. Garner hired attorney Gabe Duhon to assume the representation. Mr. Duhon asked respondent for-a copy of Ms. Garner’s file, an accounting of settlement proceeds, and an itemization of expenses. Respondent promised to deliver the file by March 23, 2015. When he failed to do so, Mr. Duhon sent respondent two e-mails requesting the file. He also spoke with respondent by telephone and informed him that medical bill collectors were contacting Ms. Garner. Respondent assured Mr. Duhon that the bills had been paid and promised to personally deliver the file on April 29, 2015. Respondent did not deliver the file as promised. Mr. Duhon then spoke with respondent’s secretary, who said she would | ¿immediately e-mail the file. When ’this did not occur, she promised to put the contents of the file onto a disc. The following day, members of Mr. Du-hon’s staff found a manila envelope on the sidewalk outside his office. The envelope was labeled “Garner” and contained one disc labeled “Danielle Garner.” The disc contained no settlement documentation, no copies of proceed checks, no settlement disbursement sheet, and no accounting. After reviewing the .contents of the disc, Mr. Duhon asked respondent to immediately email any settlement disbursement sheets and/or documents executed by Ms. Garner, as well as copies of checks paid on her behalf. After getting no response, Mr. Du-hon made multiple additional demands upon respondent for an accounting, to no avail. Mr. Duhon later learned that in December 2014, Ms. Garner’s UM insurer, Esu-rance, tendered to'respondent'a check in the amount of $13,746.44. Respondent had Ms. Garner endorse the check and he then deposited it into his client trust account. Respondent had also settled the claim against the defendant ' insurer for $15,000.00. Two checks were delivered' to him in February 2015. The first, a $9,118.76 check, was to pay a medical lien, which was never paid. Respondent deposited the second check, in the amount of $5,881.24, into his trust account after Ms. Gamer endorsed it. The only sums paid by respondent were a $1,000 “loan” to Ms. Garner, $19.46 to Acadian Ambulance, and $8.50 to Louisiana State Police.[2] |sFollowing another unfulfilled request for an accounting and for immediate delivery of checks and/or funds in his possession, Mr. Duhon and Ms. Garner filed complaints against respondent with the ODC. Respondent faded to respond to either, necessitating the issuance of a subpoena to obtain his sworn statement. On the day before the sworn statement was scheduled, respondent contacted the ODC asking to be excused from the sworn statement and to request new copies of the complaints, claiming he had never received them. The statement was canceled. Respondent was given the copies and instructed to respond. The ODC then discovered that he had personally signed for the prior complaints. Respondent was asked to provide an explanation as to why he stated that he had never received the complaints. In his response, respondent did not give the explanation, or address his failures to produce the file, or provide an accounting of funds, or provide any disbursement sheets of any monies/funds received, or produce an itemization of all expenses, or remit any settlement funds he received. Accordingly, the ODC asked respondent to provide a supplemental written response. Once again, respondent failed to explain the claim that he never, received the initial complaints. The ODC issued another subpoena for his sworn statement as well as a subpoena duces tecum. The statement was initially scheduled for February, but.because the ODC was unable to serve respondent, the statement was re-set for March. At that time, the documents responsive to the subpoena duces tecum were to be collected. Respondent appeared for the statement, but he did not bring the documents. He was then instructed to produce the documents as well as. additional information that the ODC felt was necessary by March 18, 2016. At that time, respondent provided only some of the requested information. Two months later, he provided some more, but not all, of the additional information. 14Mr. Duhon moved to enforce the settlement against the insurance company in Ms. Garner’s matter. Respondent, who was not present for the hearing, was ordered to return $5,881.24 to Ms. Garner. When he failed to pay her, Mr. Duhon moved for respondent to be held in contempt. Respondent was personally served with notice of the court date, but he failed to appear and was held in contempt. In October 2015, Mr. Duhon sued respondent on behalf of Ms. Garner. He subpoenaed respondent’s bank records and forwarded them to the ODC. A review of his trust account showed a deposit of $19,627.68 in Ms. Garner’s settlement funds but only $209.17 in the account. Because Ms. Garner received only $1,000 from respondent, $18,627.68 of her funds had been converted. During his sworn statement, respondent acknowledged that he owed Ms. Garner the funds, although he was unsure of the exact amount. Respondent also promised to “cash in” an investment to pay her. To date, he has not done so. DISCIPLINARY PROCEEDINGS In July 2016, the ODC filed formal charges against respondent, alleging that his conduct, as set forth above, violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (failure to keep a client reasonably informed about the status of a matter), 1.15(a) (a lawyer shall hold property of clients or third persons that is in a lawyer’s possession in connection with a representation separate from the lawyer’s own property), 1.16(d) (obligations upon termination of the representation), 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, |fideceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration. Hearing Committee Report After considering the ODC’s deemed admitted submission, the hearing committee determined that the factual allegations in the formal charges were deemed admitted and proven by clear and convincing evidence. Based on these facts, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee determined that respondent violated duties owed to his client, the public, the legal system, and the legal profession. His misconduct was intentional, with the most egregious being the conversion of Ms. Garner’s personal injury proceeds. His conduct caused harm to his client, as Ms. Garner was deprived of the use of her settlement proceeds. His conduct caused harm to the legal system, as Mr. Duhon had to file numerous actions against respondent in an attempt to obtain Ms. Garner’s funds. His conduct caused harm to the legal profession, by failing to preserve the integrity of the profession. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is disbarment. | (After further considering the nature and severity of respondent’s misconduct, the committee recommended respondent be disbarred. The committee also recommended he be assessed with the costs and expenses of this proceeding. Neither respondent nor the ODC filed an objection to the hearing committee’s report. Disciplinary Board Recommendation The disciplinary board noted that the factual allegations in the formal charges were deemed admitted and proven. The board determined the hearing committee correctly applied the Rules of. Professional Conduct. ; The board determined that' respondent violated a duty owed' to his client by converting-money owed to her and to third parties on her behalf, by forcing her to obtain other legal counsel, and by failing to return her entire - file. He violated a duty owed to the legal system and to the legal profession by evading and misleading counsel and by refusing to cooperate with and making false statements to the ODC. His conduct was .knowing, if not intentional. He caused substantial harm by converting money from a client and third parties, causing the ODC to spend additional resources on this matter, and by failing to return- his client’s file, which delayed her legal matter. After, .considering the ARA’s Standards for Imposing Lawyer Sanctions, fhe board determined that the baseline.sanction is disbarment. In aggravation, the board found a dishonest or selfish motive, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency,' mak-iftg false statements and other deceptive practices during the disciplinary process, substantial ‘experience in the practice of law (admitted 2001), and indifference to making - restitution. In mitigation, the board found the absence of a prior disciplinary record. - 17After further considering this court’s prior jurisprudence addressing similar misconduct, the board recommended respondent be disbarred and be required to provide restitution to Ms. Garner and to the appropriate third parties. The board further recommended respondent be assessed with the costs and expenses of this proceeding. One board member dissented and would, recommend a more lenient sanction, Neither respondent nor the ODC filed an objection to the board’s report and recommendation. DISCUSSION Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57. In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been, deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La. 1/10/03), 838 So.2d 715. The evidence in the record of this deemed admitted matter supports a finding that respondent neglected a client’s settlement and converted client and third-party |sfunds related to that settlement. He also failed to cooperate with the ODC in its investigation. As such, he has violated the Rules of Professional Conduct as alleged by the ODC. Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary-proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984). The record further supports a finding that respondent knowingly, if not intentionally, violated duties owed to his client, the legal system, and the legal profession. His misconduct caused actual harm. The applicable baseline sanction in this matter is disbarment. The aggravating and mitigating factors found by the disciplinary board are supported by the record. In recommending a sanction, the board cited the recent case of In re: Weber, 15-0982 (La. 8/28/15), 177 So.3d 106. In Weber, an attorney represented a homeowner in an insurance claim. The insurance company issued a living expenses check made payable to both the attorney and the client. The attorney accepted the check and told his client that he would hold the funds in his trust account until the client needed them. Thereafter, the client was unable to contact the attorney. The client never received the check and had to expend additional resources to hire another attorney to resolve his case. The attorney had not deposited the funds into his trust account, made no attempts to return the money to the client, did not cooperate with the ODC’s investigation, and allowed the formal charges to become | adeemed admitted. His only mitigating factor was the lack of prior disciplinary record. For this misconduct, we disbarred the attorney. In determining the appropriate sanction in Weber, we relied upon the seminal case of Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La. 1986), which set forth guidelines for imposing discipline in a conversion case. According to Hinriehs, disbarment is warranted when one or more of the following elements are present: the lawyer acts in bad faith and intends á result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings. Respondent’s misconduct, like the misconduct at issue in Weber, falls into this category. The magnitude or duration of the deprivation of funds is extensive, the client was significantly damaged and greatly inconvenienced, and respondent has failed to make any restitution to his client. This conduct warrants disbarment. Accordingly, we will accept the disciplinary board’s recommendation and disbar respondent. DECREE Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Peter Brian Der-ouen, Louisiana Bar Roll number 27436, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall make full restitution of all monies owed to Danielle Garner and her medical providers. All costs and expenses in the matter are assessed against respondent in [ tnaccordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty-days from the date of finality of this court’s judgment until paid. . Respondent has been ineligible to practice law since June 1, 2017 for failing to comply with mandatory continuing legal- education requirements. . As of January 20, 20IS, Ms. Gamer's medical bills totaled $18,975.95, and the following providers had not been paid: Shawn Johnson, D.C. $3,925.00 Acadian Ambulance $1,752.56 Our Lady of Lourdes Hospital $11,398.45 Acadian Radiology $859.00 Dr. Pierce $95.00 Acadiana Acute Care $870.94 Randall Faulk, M.D. $75.00